Welcome to the Sixth Circuit. We have studied your cases and we are eager to hear your arguments so with that proceed with first case please. Case 17-2157 USA v. Frank Richardson and 17-2183 USA v. Frank Richardson. Argument not to Thank you. Good morning, Your Honors. May it please the court. Michael Desi, I'm appearing on behalf of the defendant Frank Richardson. Good morning to my brother counsel also and other members of the court staff. Your Honors, we're here on an appeal. Oh, by the way, I'd like to reserve three minutes for my rebuttal. We're here on an appeal from an amended sentence that was entered by the district court and there's actually several issues that have been raised on the appeal and I believe that it is appropriate for the court to consider all of the errors that have been raised and briefed whether it be under a plain error standard or whether it be under an ineffective assistance of counsel standard. I know that is a bit unusual and I know that generally the court does not hear issues that may cross or transcend over into the bounds of ineffective assistance of counsel. How about start with the general proposition about the remand? The scope of the remand? That's right. Sure. Well, it was, it's my position and argument that the remand from this court to the lower court was a general remand that was not limited. Now, so let's explore that for a moment. Sure. Why do you say that? Well, I understand that the Sixth Circuit's order said that the case would be remanded for consideration of my client's claims in Johnson. Nope. That's not what it said. Well, generally I'm paraphrasing, but it says that it was being remanded because of the Johnson issue. It was granted by the Supreme Court, sent back to this court, and then this court sent it back to the district court. But my argument is that the remand doesn't actually say the court shall only consider or the remand does not say that the only issues that should be considered at resentencing are XYZ and I've cited examples in cases, for instance, where this court has remanded cases and said this shall be remanded for resentencing without consideration of the safety valve enhancement, for instance. That's one example of a case that I've cited in my brief. So, I believe if we look at the general context pretty clear, I mean, it's the Johnson issue. Well, I agree that the Johnson issue was the remand. I don't disagree with that. And there's another case cited that in my brief, I believe it's Daniels, and in that case this court said, well, that may be the reason for the remand, but it wasn't necessarily a limitation on the remand. The presumption is that the remand will be de novo for resentencing to give the court the opportunity to consider whatever sentencing factors and whatever arguments might be. But aren't you asking for more than sentencing? I mean, it's... Are you asking for instruction errors? You're asking for things that... Yes, Your Honor. ...actual... I don't disagree. I don't disagree with you. I don't disagree. I am raising those arguments, and that's why what I was raising about the issue of ineffective assistance of counsel is we have some very serious jury instruction errors, instructional errors, which this court has reversed at least three convictions based on the same error. So... And was this all raised at the trial? No, it wasn't. I don't dispute that, Your Honor. I don't dispute it. Well, how do you feature this court circumventing that hurdle? Well, all right. First, and I cite this on page 18 of my brief, but the court has said that the court has said that the general rule of not raising ineffective assistance of counsel claims is prudential. It's not jurisdictional. And this court in Ferguson and Williams, in both of those cases, recognized that the court certainly has the power and the ability to do it. I don't dispute, Your Honors, that you're saying they weren't raised before. Isn't it... Isn't it safer for your client to wait on an ineffective assistance? I mean, if you raise it now and we reach it, he's not going to be able to litigate it again, right? Well, I agree... He's never... He hasn't filed a habeas petition. It would be his... So he could file his first petition, raise ineffective assistance. Wouldn't that be a safer route for your client? I don't disagree that he has the opportunity and the ability to do it. The reason I'm asking the court to look at the claims is because, like what Ferguson and Williams say, is if the record is sufficiently developed, in which this case it is, what would we do? What purpose would we serve by having an evidentiary hearing and asking counsel, why didn't you object to these mismatched elements of the 924C charges? I mean, the district court read an instruction that was just clearly incorrect, in which this court has reversed in Castano, in Savoirs, in Lowe. So what would be the point in going back, having that hearing, to ask counsel, I understand if this court ruled against my client on the issue, then he is... He understands that that issue couldn't be raised in a subsequent 2255. He might have other issues I don't know to raise in a 2255, but that issue would be taken off the table if the court made the legal conclusion that the claim either prevailed or didn't. So the record is factually developed. The jury instructions were filed as part of the court record, and you have them. You can see the errors in them, and there's multiple errors. The district court erroneously instructed the jury as to the predicate offenses. But you're going a little to the merits here, but I'm still having a problem with how you would think we would get to it. And I think in your opening, you said plain error. If this court found there was a general remand, which is the first hurdle, right? Yes. Then we would reach the substance of your ineffective assistance by virtue of finding there was error. It was plain. It affected your client's substantial rights. I agree, although it's also my position that you could reach that without regard to whether you found the remand to be a general or limited, because I also believe that is a prudential issue. And if the court has the legal issue in front of it, and the record is sufficiently developed, I believe the general presumption is that the remand is general, unless it's specifically and expressly limited. I don't believe that the language of the remand is expressly limited in the sense that it would cap the issue at the district court and its ability to hear the issues. And I also believe the ineffective assistance claim is also adequately presented that the court could reach that issue. And again, I know we're disagreeing, perhaps, on the general proposition, but I do believe, as the court said, it is not a jurisdictional issue. It's prudential. In the case of the ineffective assistance claim in the first appeal, did he have a different lawyer on direct appeal? Different than me? Then different from the trial court? Different from his trial counsel. Generally, you wouldn't raise an effective assistance if you were the same lawyer, right? To be honest, Your Honor, I don't remember if it was the same lawyer. I know who the lawyer was that tried the case. I think it may have been the same lawyer. I mean, if he could have been raised on direct appeal, just like these jury instruction errors, just like the general versus limited remand issue, to me, is secondary. It's just a waiver, isn't it? I mean, it doesn't matter what the general remand doesn't mean. You get to re-litigate conviction-based arguments that you didn't raise the first time. Well, I understand that that is the general rule. And again, my argument is that if we have a record and ineffective assistance of counsel claims that are adequately developed and they're demonstrated in the record, that the back and have us ask the question. Really, the question we should ask is, what would you do at an evidentiary hearing to ask counsel, well, why didn't you object to what was clearly a misstatement of the law and these jury instructions have been found to have been faulted and resulted in several other reversals of cases? So, I just don't see... I'm struggling with the practical issue, I think, that Judge Nalbandian brought up originally. It seems that you would want to have that opportunity to complete the record. You would want to be able to have the questions to show the span of ineffective assistance of counsel because that raises, shall we say, the merits of your claim of ineffective assistance and broadens the number of issues that you might be able to present and have taken by the court on a 2255. I don't... So, what practically speaking makes you want to divide the issues this way? Well, I don't disagree that my client could raise all the issues that he might have on a 2255. I don't disagree with that, Your Honor, and in that instance that would allow the district court the opportunity to conduct plenary hearings on all the issues. I don't disagree. However, I just think as a matter of expediency as to the instructional errors that have been raised, that those particular errors could be raised at this point. Now we're dividing it even further, picking those out and putting them into this bucket and leaving the remainder for another. To an extent, yes, but only if the instructional errors do not prevail. And the instructional errors on their face have strong merit and have compelling argument for the reversal of the 2255. This court has looked at. Castano, for instance, the court said, look, this is an incorrect statement of the law when you mismatch these elements. So, if the conviction is reversed, there would be no need for further proceedings or a plenary hearing on the 2255. So, speaking from the perspective of what might happen, if my client were to prevail on the issues of the 924 instructional errors, we won't have a second hearing on a 2255 or an effective assistance of counsel. So, I do believe that they're adequately reflected in the record. I understand that the court's concern is why divide them and they certainly could be done together. On that note, there's a very interesting issue of first impression on the Johnson issue about the elements clause of 924C. And I understand the landscape of that law has changed in light of DiMaia, the Supreme Court's decision. I believe that the residual substantial risk clause of 924C. So, in that instance, the district court could also make the decision in the first instance as to whether aiding and abetting Hobbs Act robbery constitutes a crime of violence under the elements clause. Again, a question that has not yet been answered by the circuit. If we took up the elements clause, then the first argument would be unnecessary to address, right? That's correct. Yes, Your Honor. Right. And so, that is also... And so, Schuette and DiMaia and all of that line of cases, that is not necessary to resolution of your claim. As to the 924C. As to the 924C argument. Yes. Yes, Your Honor. I agree. And that's another legal question that I believe is appropriate for the court's resolution in order to have compatible standards for all of us to follow at the district court. And given that aiding and abetting Hobbs Act robbery has not yet been considered... We wouldn't need to get to the Hobbs Act robbery. Well, I believe in my letter of supplemental authority, I filed... I believe that Taylor is called into question now in light of DiMaia. And I also cited a Tenth Circuit opinion, which I understand is not binding, but the Tenth Circuit clearly undercuts the reasoning of Taylor. I don't see how Taylor can withstand that scrutiny. That's Schuette, right? The distinguished Taylor. It did. Yes. On the same... On what is it... It did. So DiMaia comes down, it's not a surprise. Schuette says, oh, they're not... The language is the same, but the result isn't the same because it's a conviction versus a sentencing enhancement, right? I mean, why... Well, I thought DiMaia was a surprise. But no, I understand what you're saying, yes. The reasoning in Schuette that distinguished Taylor, I understand the reasoning. But if you look, for instance, at that Tenth Circuit opinion that I filed in my letter of supplemental authority, it clearly refutes the legitimacy of that reasoning in light of DiMaia. So I believe DiMaia calls that into question. I mean, just as a technical matter, Taylor is binding on us. It's the law of the circuit. Well, I believe that... I don't know that DiMaia is an intervening Supreme Court decision that changes, given Schuette and given what we've already said. I think, isn't Taylor... We're bound by Taylor, right? I would disagree. I would argue that the Supreme Court's decision provides a basis for this court to find that Taylor is no longer a good law. And I know I've exceeded my time, so unless you want me to continue an explanation, I will reserve my time. I'll let you do it in your rebuttal. All right. Thank you, Your name is Shane Crowley. I represent the United States. I think the first question is what Your Honor's focused on through much of my counsel's argument, the scope of the remand. And frankly, to a certain extent, it doesn't matter whether it was a general or a limited remand, because what is very clear from the order is this was a remand limited to resentencing. And a remand for resentencing does not permit a challenge to a conviction, which is what a challenge to the jury instructions is. But if the District Court re-examines the Johnson issue under the remand, doesn't it result in the convictions being reversed? Because he's convicted of 924C. It's not a sentencing enhancement situation. So if Johnson calls into question what's going on in this case, those convictions go, right? He gets resentenced, but he actually gets the judgment changed, doesn't he? Well, Your Honor, perhaps. And I think perhaps if we look at it contextually, at the time the order was entered from the Supreme Court, and then at the time that the order was entered from this circuit, there was some question as to whether Johnson applied. Certainly at the time that the Supreme Court issued it, there was a question whether Johnson applied to the guidelines. And there was also a question whether it applied to 924C. By the time this court had already issued its order to the District Court, Taylor had already been decided. So there was no question as to the applicability to 924C. There was still a question as to the guidelines, because this court had held in Pawlak that Johnson applies to the guidelines. And that's part of the reason why we had this sequence of pre-sentence reports issued in January and March, and then again in July. In between that period, Beckles came out. If I understand your argument, you're saying the remand was unnecessary because Taylor existed and whoever the panel was that remanded the case didn't need to remand it. No, not quite. So there were two different issues. It wasn't just whether Johnson applied to 924C. So that would, in the hypothetical world in which we're not conceding, but in that hypothetical world where Johnson did apply to 924C, that perhaps would have implicated the convictions. But that had already been decided by the time this court issued the remand to the Johnson applied to the residual clause because Mr. Richardson was found a career offender under Section 4B1.1 of the guidelines. And at the time of his sentencing, there was a residual clause that perhaps was invalidated by Johnson. So that affects solely the sentence? That would affect solely the sentence. And this court had already held in the spring of 2016 in Pawlak that Johnson did apply to that guidelines residual clause. And so there was a need to have a new pre-sentence report. There was a need to be on the non-924C convictions. However, after this case was reassigned from Judge Rosen to Judge O'Meara, Beckles came out. And at that point, the Supreme Court said Johnson does not apply to the guidelines. So at that point, the entire reason for the remand had been invalidated. We objected in May of 2017 and asked probation to reinstate the original pre-sentence report. Does that matter at all, all of that argument? I mean the question is whether or not the conviction was or just the sentence was vacated by virtue of the remand. Well, it only mattered, I think his question was more what would have happened had they determined, had the district court determined Johnson applied. Your answer is correct. At the time that this was going to Judge O'Meara, there was only one question that was, was the sentence affected by Johnson? And the answer was no. My point being simply whether this was a general or limited remand, the convictions were not at issue. And even if they were at issue, which they were not, that would not allow him to bring instructional errors not related to Johnson, such as these mismatched elements that they've pointed out. And that's United States v. Haynes. That was a case this court decided back in 2006 when a Booker challenge, when a case was remanded post-Booker, and a defendant tried to challenge the conviction. And this court said this was a remand for resentencing, not to regardless of whether it's a general or limited remand. That was the Haynes case that we've cited in our brief 468 F. 3rd 425. He's got some pretty good arguments, though, doesn't he? On the merits? I mean, wouldn't you? For which issues? The jury instruction. No, Your Honor, he does not. And in fact, there were a series of cases which he does cite, which certainly would suggest that he does. But the Supreme Court has issued decisions since then that largely suggests that those are all invalid as a matter of law. Didn't the trial? I mean, the government itself. Which issue are you referring to? I can't remember which one it was. There were a number of issues that the government suggested. I think you're talking about the reference to the wrong count. As you know, 924C relies on underlying predicate. That's certainly a misstatement. And if you look at the verdict, there's no question that that was harmless, because the verdict states not only what the underlying predicate is, it says count to, and this is the verdict form, this on page 676 of the record, it says, as to count to, using and carrying of a firearm during and in relation to a crime of violence, aiding and abetting, it then refers to the specific store and the date of that robbery. So even to the extent that the district court did reference the wrong underlying count, the verdict form would have been very clear to the jury. But again, this is an issue for the district court to address on a 2255. And what was the case that you said you thought resolved the issue of the erroneous jury instructions? I'd be happy to. Your Honor, I would refer both to Skilling versus the United States and Hedgepeth versus Pulido. Skilling is at 561 U.S. 358. Hedgepeth is 129 Supreme Court 530. And what is the principle? Because I thought our case law was pretty clear. This was an Your case law was pretty clear. But then the Supreme Court said in 2008 and then again in 2010 that instructional errors such as these are subject to a harmless error analysis. And so when a jury is instructed as to alternative theories of liability, some which are viable, here would be the use and carry, and one which may not be viable, such as the possession, those are subject to harmless error. And so we would look at, did that harmless or did that erroneous instruction undercut the jury's finding? And here the answer is obviously not, because not only did the jury find use and carry, there was a specific finding that brandishing was involved. And so there's no question that the jury did not erroneously convict Frank Richardson of aiding and abetting the possession of a firearm. But he was convicted of brandishing. I'm not clear exactly how it sorts through this, but isn't the brandishing issue part of the problem in this case? Because brandishing was not charged. And that's correct. It was not, but also that's far from clear that that's a mistake as well, because this case was indicted in 2010. At that time, it was law of this circuit, as well as the Supreme Court, that you didn't need to allege brandishing. This trial began in June of 2013. Aline came out in June 18th, I believe, of 2013. So in the middle of trial, Aline comes out that says, this is an element that a jury has to find. And so the parties actually discussed how to address this, and the parties reached the decision of instructing on brandishing and requiring this special finding. It's hard to see how the parties and the court trying to address a Supreme Court case that comes out in the middle of trial and specifically require the jury to find the very thing that Aline requires is somehow error. That's mind boggling to me and frankly contradicts the way that I understand the process supposed to work. But again, this is why this issue should be dealt with in a 20 to 55, because these are far from clear. These are errors, and certainly to the extent they are, they're harmless errors. Again, whether general or limited remand, the instructional errors were not before the district court. They're not before this court. All that was before the court was, does Johnson apply? The answer was no. Beckles answered that as to the underlying guideline issue, and Taylor had answered it at the time as to the 924C. And why doesn't the 10th Circuit use explanation of Taylor's reasoning? Why aren't those both called into question by DeMaia? Well, certainly, Schuette and... The 10th Circuit says it did. Absolutely, Your Honor. And Schuette is largely what this court... Schuette and DeMaia are largely the same. I think Schuette was trying to explain why Taylor might be an anomaly and why Johnson did apply to 16B. I don't think this court needs to reach that... The 10th Circuit would disagree with that based on the reasoning of DeMaia. I believe what the 10th Circuit said is that Taylor was the erroneous one, not Schuette. I understand, but it was Schuette's explanation and distinguishing of Taylor. So it's all... It's all of all. It is. Absolutely. And I think the short answer is this court doesn't need to reach this issue because aiding and abetting Hobbs Act robbery is a crime of violence under the Elements Clause. Help me understand why, exactly the extent of that argument. If aiding and abetting is automatically subject to the crime itself, punishable as if it were the crime itself, is the argument then that conspiracy to commit that crime is punishable as the crime itself? How broad does that work? No, Your Honor, because those require different elements. So a conspiracy, as you know, requires... Is an illegal agreement between two or more parties to commit some sort of offense, and then the person knows about the existence of the conspiracy and voluntarily joins into it. Some conspiracies also require an overt act, but regardless, the agreement is the crime. So I may agree with you today to rob a bank, but that doesn't mean we've done anything with force. And aiding and abetting because it's a theory? Aiding and abetting is different because the underlying crime is a committed. That is one of the elements the jury must find. So in order to convict someone of aiding and abetting Hobbs Act robbery or bank robbery, as in the Dieter case that I submitted in a 28-J this week, in an aiding and abetting context, the crime is committed. So here it would be Hobbs Act robbery. And so there, that necessarily requires the use, attempted use or threatened use of force. It also requires that someone who is aiding and abetting that principle to know of the full scope of the crime, that's Rosemond, I have to know the full scope of the crime and intend to commit the full scope of the crime, and I have to aid it in somehow. Those are the three things the jury must find. So in an aiding and abetting context, unlike a conspiracy, that force is found by the jury finding the crime was committed. And this jury was instructed in all of that. Even someone, even the aiding and abetting that might be alleged by someone who picks up one of the criminal participants of the crime after the crime event and takes that person home? Well, keep in mind that as an aider and abetter, I am... Aiding and abetting, if I'm convicted of that, I am the principal. I'm convicted the same as a principal. And so unlike in an agreement standpoint, the crime is committed and that has to be found. And I have to find that I've committed it, I've assisted in some way. I'm not sure that picking someone up after... There's a difference between committing the crime and assisting in some ways, but you're saying that that's the burden of the government to show that it was adequate to have, to be considered participatory for the crime. That's correct. And I think to use your... But an aider and abetter isn't actually using force or threatening force or... Exactly. ...any of the acts, right? I mean, you... Perhaps, perhaps not. It depends on the circumstances. However, 924C does not require that. But it's enough. You're saying it's enough that somebody, somewhere used force, Hobbs Act robbery, right? Correct. The statute requires that as an element, it doesn't... We don't look into who did it and how it worked. That's not the categorical approach. We look at as an element, did it involve the use, attempted use, or threatened use of force? Gooch has answered that question. The jury has to find that was committed by one of the participants and then in order to convict as an aider and abetter, that crime was committed, you intended to assist in that crime, knowing the full scope of it, and you took some sort of step to further it. And I think it... Is that the law around the country? I mean... Of which part? The aiding and abetting. I mean, does everybody accept that aiding and abetting is, in fact, qualifies under the use of force requirement? So as far as the way I define aiding and abetting, that comes from Pattern and Jury Instructions in Rosemont. But as far as whether other courts have accepted this, frankly, not a lot of people have tried to litigate this issue. I cited the few cases that have addressed the issue in my 28-J on Monday. The Dieter case out of the 10th Circuit, the 11th Circuit is addressed a number of times. I'm aware of... Is that because it's not charged that way in other circuits? Or because the case law in other circuit is distinguishable? As far as hanging the principal crime on an aider and abetter. No, the case law as far as a principal and an aider and abetter being the same, that's uniform. That's... Again, the Supreme Court has said that. That has been the law since 18 U.S.C. 2 was enacted, where we abolished the difference between accessories and principals. But as far as why there's not more case law on this, I think people just haven't tried to argue that because there's no distinction between the two. And in fact, in this case, I think there was some confusion. If you remember from the resentencing hearing, Mr. Richardson claimed that he was convicted of conspiracy and kept harping on the fact that I committed conspiracy. That's not a predicate crime. I think there was just confusion on the fact that conspiracy and aiding and abetting are not the same thing. I think that's why people are not challenging it more because there is no legal distinction. There's no principal basis to find that it's not a crime of violence. I will say that there was a dissent in Colon, but that was a very different sort of circumstance because that was in a successive 2255 in the fall of 2016, where everyone's trying to figure out how does Johnson apply. And what that dissent said, I think that was Judge Martin in the 11th Circuit. She said, this isn't clear. This should be addressed down below because it might not apply. She didn't say it doesn't apply. Because again, as you know, from a successive 2255 standpoint, is there a prima facie claim that this could apply? Let the district court figure it out because, and as you know, from 2016, we had no idea what was going on in a lot of these Johnson cases. And now they're trying to figure it out. That was more for the district court to decide. But then it came up again in the more recent case of Charlton. And that was a full panel in the 11th Circuit that said, no, aiding and abetting is the same. And frankly, that was aiding and abetting attempted Hobbs Act robbery. There's no case that said that aiding and abetting doesn't qualify. There's no principled legal distinction to separate those two. Conspiracy might be a different story, but this court doesn't need to go there. Attempt a different story also? Pardon? Is attempt a different story also? I see my time has ended. You can answer. I want to make sure. That could be. I certainly don't want to concede that, but that's not here. These were all full-fledged robberies in which they occurred. Attempt could be, but perhaps not. That's for another day. Thank you all. Thank you for your argument. Thank you, Your Honors. I strongly disagree with the government's assertion that aiding and abetting is the same. It's not the same. The jury instruction specifically tells the jury, it is not necessary for you to find that he personally committed the crime. You're right. There is a distinguishing factor, Your Honor. You mentioned, you asked the point, you said you don't have to find that someone committed the elements of the underlying crime. That's correct. Somebody has to commit the crime. That's right, but... Somebody has to commit Hobbs Act robbery. Yes, but... He's right, isn't he? I mean, we treat aiding and abetting as if essentially you committed the crime. We treat it the same for punishment purposes. I don't disagree with that, but for purposes of determining whether aiding and abetting Hobbs Act robbery can constitute of crime of violence, we do that under the categorical approach of looking at the elements. And Section 2 makes clear you don't have to reach the underlying elements of the crime. So you don't have to use force or threaten force to be convicted of the aiding and abetting. So under the categorical approach, I disagree that aiding and abetting Hobbs Act robbery can constitute of crime of violence. Now, there are scant case law about it. We agree with that. My brother counsel has cited the court to the 11th Circuit's decision in Charlatan. Charlatan relied on Colin, and Colin, as my brother counsel pointed out, was a successive motion to vacate. So the court was only considering whether to grant a certificate of appealability, which was Judge Martin's complaint in the dissent. She said, look, this hasn't been fully briefed. It's not been decided. We don't have a record. So, I mean, with all due respect, the 11th Circuit and Colin reached that decision, sort of walked off the cliff, and then Charlatan said, oh, well, we're going to follow Colin now because Colin said it. But if you look at Section 2 of 18 U.S.C.A. Section 2, aiding and abetting, it's clear when you're applying the categorical approach that aiding and abetting Hobbs Act robbery does not constitute of crime of violence. And there's no other case law that's been out there. You've asked the questions, well, what's everyone else in the country doing? We don't have much law on it, which is why it is an open question. I want to address the brandishing point. My brother counsel said, well, it came out before they charged it. They charged it at a time that they didn't have to charge brandishing. We agree with that. The law changed. And he says, well, we had a discussion about what to do. The thing to do was to supersede the indictment and put it in there. That was how you correct it. It has to be charged. Aileen makes clear, the Supreme Court's decision, Aileen makes clear you have to charge the element. It wasn't charged. And I find the government's explanation inadequate to say, well, we just decided to instruct the jury on it. Well, then they proceeded at their peril because they should have just issued a superseding indictment. It's really that simple. As far as my brother counsel's point about the Supreme Court's cases that have changed Castano, I strongly disagree with that. The Supreme Court merely just reaffirmed that harmless error applies. Judge Batchelder in Low specifically rejected harmless error as to those mismatched jury instructions. She says, it's wrong, it's wrong. And she reversed the conviction. And that's the law in this circuit that I believe is still controlling. The Supreme Court's decisions did not change that standard, nor did it change what was held in Low, Castano. Has the jury verdict form changed that analysis or is it simply an error because it was charged wrongly? It's an error because it was instructed wrongly. Yes, it was an error because it was instructed wrongly such that the jury was allowed to return a verdict on a non-existent crime. And that is what the court has held in Castano, Savoirs, and Low. And by the way, just as a matter of an aside, I don't know if your honors realize, all of those cases came from the Eastern District of Michigan from the same U.S. Attorney's Office. So the point to be made is they're recycling these jury instructions that are erroneous. These same instructions are being recycled by, in some instances, the same counsel for the government. Give them a call. I'm sure they know now. All right, thank you, your honor. Thank you for the time. Thank you both for your arguments. We will consider your case carefully and issue an opinion in due course.